UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**CRIMINAL ACTION NO. 07-185-JBC-JGW-2**
(Civil Action No. 09-7091)

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

v.

**JOHN NATHAN COLEMAN,**                                                         **DEFENDANT**

## REPORT AND RECOMMENDATION

On August 20, 2009, defendant John Nathan Coleman filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The United States filed a response in opposition to defendant's motion on November 10, 2009, and defendant filed a motion for leave to supplement his §2255 motion on November 12, 2009. On April 2, 2010, this matter was re-assigned to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. § 636(b). Having considered defendant's tendered supplement as well as the original motion and response thereto, I now recommend that the defendant's §2255 motion be denied.

### I. Procedural Background

On November 21, 2007, the defendant was arraigned on an indictment charging him with multiple drug trafficking counts including conspiracy. Four co-defendants were also named; all of them pleaded guilty pursuant to written plea agreements accepted by the court and filed on June 25, 2008. On July 9, 2008, the defendant also entered into plea of guilty to Count 1 (conspiracy with intent to distribute 5 or more grams of cocaine base). The publicly filed portion

of the written plea agreement[1] states in bold type:

> **7. The Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution.**

Doc. 131. The waiver language included in the plea agreement is the only provision set out in bold type; the agreement bears the defendant's signature as well as that of his attorney, the prosecutor, and the presiding district judge.

On October 2, 2008, the defendant was sentenced to a term of imprisonment of 92 months on Count 1, to be followed by a four-year term of supervised release. Doc. 133. Counts 2 and 4 were dismissed. The defendant filed no appeal, but instead initiated this collateral challenge to his conviction on August 20, 2009.

Defendant's motion seeks to set aside his sentence, pursuant to 28 U.S.C. §2255, on grounds that he received the ineffective assistance of counsel. Specifically, he alleges that his attorney procedurally "barred him from pursuing an appeal" and committed the following errors: 1) failure to challenge the amount of drugs attributable to the defendant and permitting defendant to plead guilty to conspiracy; 2) failure to challenge prior state convictions that were more than 15 years old; 3) failure to challenge the facts underlying the conspiracy charge; and 4) failure to appeal a sentence based on crack cocaine, when defendant agreed only to plead guilty to cocaine base and not crack. In addition to attorney error, the defendant's motion argues that the court should not have accepted the plea due to a lack of factual basis that defendant was involved in a conspiracy. Finally, in his supplement to his motion, defendant argues that the indictment failed to list a drug amount and that counsel erred by failing to challenge the indictment.

---

[1] The plea agreement included a sealed supplement not at issue in this proceeding.

## II. Analysis

### A. The §2255 Motion Is Barred by Defendant's Waiver

The relief sought by defendant is barred by the express waiver executed in the defendant's written plea agreement. A motion brought pursuant to 28 U.S.C. §2255 is a collateral attack on a conviction. In his written agreement, the defendant expressly waived his right to appeal and the right to collaterally attack his guilty plea, conviction, and sentence. The waiver was unconditional and contained no exceptions.

A waiver is a "relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770 (1993). Even a constitutional right may be waived, as long as a defendant did so by knowingly and voluntarily entering into a plea agreement. *See, e.g., United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). A waiver in a plea agreement is considered knowing and voluntary if the defendant testified that his guilty plea was not coerced and that he reviewed and understood the agreement's terms. See *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001). Even a collateral attack based on ineffective assistance of counsel may be waived. As the Sixth Circuit stated, "when a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bringing a claim of ineffective assistance of counsel based on 28 U.S.C. § 2555." *Id.* The rare exception to this rule is when the collateral attack concerns the validity of the waiver itself; otherwise, such a waiver would never be effective.

The written transcript of defendant's plea proceedings reflects conformity with the court practice of discussing defendant's waiver on the record, in compliance with Rule 11(b)(1)(N).

THE COURT: I'm going to ask Mr. Walker to summarize this plea agreement...

3

Listen to him carefully. And then you and I'll talk again.

Mr. Walker, in words that a non-lawyer can easily understand, please.

MR. WALKER: Yes, Your Honor.

The United States and Mr. Coleman enter into this written plea agreement in which he pleads guilty to Count One of the indictment.

The charge is the conspiracy, or agreement, to distribute five grams or more of cocaine base, crack cocaine.

The United States agrees that it will move to dismiss Counts To and Four upon sentencing.

The plea agreement sets forth the essential elements that the United States is required to prove beyond a reasonable doubt.

And the parties have agreed to factual basis that the United States is prepared to prove beyond a reasonable doubt were this matter to go to trial. And Mr. Coleman agrees that these facts are true....

He - based on the concessions made by the United States in this plea agreement, he has agreed not to file a motion for decrease under Chapter 5 of the plea agreement, nor to seek a sentence below the applicable advisory sentencing guideline range.

He also agrees to waive his right to an appeal and the right to file a separate lawsuit of the guilty plea, conviction, and sentence, including any order of restitution.

Doc. 140, TR at 12-14. The colloquy that the court subsequently engaged in with the defendant confirmed that his plea was voluntary, knowing, and intelligent, and also included additional discussion of the waiver:

THE COURT: Thank you, Mr. Walker.
Now, Mr. Coleman, did you hear and understand what he said about your plea agreement?

DEFENDANT COLEMAN: Yes, ma'am.

4

THE COURT: Did he describe it accurately?

DEFENDANT COLEMAN: Yes, ma'am.

THE COURT: You hesitate. Is there some way in which you believe he didn't?

MR. GORDON: Well, there is one thing I did want to point out, Your Honor. It is in there, and I don't know if he is making reference to that. But it - - when Mr. Walker and I were working on this case, there was some question about him being a career offender. And it says in there under C of 5C, a criminal history of VI, obviously is automatically a career offender. He is a VI, in fact. But we have done some further research in this thing, substantial amount of time on it, and have determined from what it appears ...that he will – his is not – he's not a career offender. So he will commence at a 28 under D. And that's what he understands it to be, and that's what I understand it to be so –

THE COURT: All right.

Mr. Gordon: But that was in there, because at one point it looked as though he was a career offender.

.....

THE COURT: You have 5D in there in case he's not.

MR. GORDON: Right.

THE COURT: All right. So both bases are covered. I understand.

MR. GORDON: Okay. Thank you, Your Honor.

THE COURT: And so other than that, is there anything that's not correct about what he said about the plea agreement?

DEFENDANT COLEMAN: No, ma'am.

THE COURT: Okay. All right. Now, there are some facts set out on Page 2 under paragraph three in some detail. When you signed this plea agreement, did you mean to agree that all of those facts are correct?

DEFENDANT COLEMAN: Yes, ma'am.

THE COURT: Okay. You have waived, or given up, in paragraph seven your

5

right to appeal or attack collaterally, which just means file a seaprate lawsuit, attacking your guilty plea, the conviction that will result from that plea, your sentence, or any order of restitution.

Do you give those rights up voluntarily?

DEFENDANT COLEMAN: Yes, ma'am.

THE COURT: You understand you had those rights until you signed this plea agreement giving them up?

DEFENDANT COLEMAN: Yes, ma'am.

*Id.* at 14-16.

The court extensively questioned the defendant to make certain that he was not being forced in any way to plead guilty, that he was pleading guilty solely "because you are guilty and not for any other reason at all," and that he was fully aware of all of the individual and specific rights he was giving up by pleading guilty. *Id* at 16-18. Finally, the court asked the defendant to provide an oral recitation of the facts to complete the record, in addition to the facts written in the plea agreement. Based upon the defendant's responses, the court concluded that the defendant was competent, that he was aware of the charges against him and the consequences of his plea, that his plea was knowing and voluntary, and that there was an independent, factual basis for the plea. *Id.* at 23. The court also established that defendant was fully satisfied with the advice, representation and counsel provided by his attorney. *Id.* at 2-4.

The defendant's current motion is without merit. He received the benefit of his plea agreement through dismissal of two counts of the indictment and a three-level reduction for the acceptance of responsibility. Having received the benefit of his agreement, and having entered into his agreement knowingly and voluntarily, the defendant should not now be permitted to

violate that same agreement. *See United States v. Gibney*, 519 F.3d 301 (6th Cir. 2008)(valid waiver bars appeal); *Short v. United States*, 471 F.3d 686 (6th Cir. 2006)(waiver of collateral attack barred claims brought in §2255 proceeding); *Nunez v. United States*, 546 F.3d 450 (7th Cir. 2008)(holding that waiver of collateral attack bars right to claim ineffective assistance of counsel); *see also United States v. Harper*, 2008 WL 4829872 (E.D.Ky. Nov. 5, 2008)(rejecting §2255 claim that defendant would never have pleaded guilty but for counsel's false promises where nothing in record suggested that defendant misunderstood the scope of his waiver of his right to appeal and collaterally attack his conviction).

## B. Alleged Failure to Appeal

The standard form on which defendant's motion is filed requires him to explain why he did not file a direct appeal. The defendant's response states: "Ineffective assistance of counsel, proceedurally [sic] barred me from my appeal, et. al." Defendant's first assertion of error similarly alleges "ineffective assistance for failing to appeal defendant's sentence" and states that his attorney "procedurally barred petitioner from his first direct appeal as a right...." The referenced statements are somewhat ambiguous. One interpretation is that the defendant believes that his attorney rendered ineffective assistance by permitting the "procedural bar" of the waiver of appeal rights in defendant's plea agreement. Notably, the defendant makes no specific allegations as to when or how, if ever, he formally requested his attorney to appeal.

Defendant's trial attorney has filed an affidavit in support of the Government's response in opposition to the §2255 motion which notes that 1) defendant clearly waived his right to appeal in the plea agreement; and 2) the defendant gave no indication that he wished to appeal. Doc. 143-1. Although the defendant moved for leave to supplement his §2255 motion *after* the

Government filed its response, the tendered supplement offers no refutation of counsel's affidavit that counsel was unaware of any request to file an appeal. I conclude based upon counsel's affidavit, and the lack of any contrary specific allegations by defendant that he timely requested an appeal, that the defendant made no such request. Therefore, it was not error for counsel to fail to file a notice of appeal.

Even if there were some evidence in this case that defendant timely and specifically requested that his attorney file a notice of appeal, I conclude that it was not error for counsel to fail to do so given the valid waiver in defendant's plea agreement. *See Nunez v. United States*, 546 F.3d 450, 454-455 (7th Cir. 2008)(holding that presumptive prejudice standard of *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029 (2000) does not apply in the case of a clear waiver); *United States v. Mabry*, 536 F.3d 231 (3rd Cir. 2008)(same). The undersigned has reached the same conclusion on similar facts. *See United States v. Rosales-Arevalo*, Lexington Crim. No. 07-153-JMH-JGW-2, Report and Recommendation filed 5/24/10). Although the Sixth Circuit has not yet published a decision on the issue, other unpublished decisions within this circuit are in accord. *See, e.g., Wright v. United States*, 320 Fed App'x 421, 2009 WL 937702 (6th Cir. April 8, 2009); *United States v. McCormick*, 2008 WL 5110574 (E.D. Mich. Dec. 2, 2008); *United States v. Walls*, Covington Crim. Action No. 05-92-WOB-JGW (Doc. 79, Report and Recommendation of 3/13/08 adopted on 4/4/08); *U.S. v. Taylor*, London Crim. Action No. 6:07-12-DCR, 2008 WL 482873 (Nov. 5, 2008).

### C. Claims Without Merit

Although defendant's voluntary waiver bars him from presenting any of his claims in this proceeding, the United States persuasively argues that the claims are wholly without merit even if

8

they were to be considered.

Most of defendant's current claims challenge the factual basis of the plea, alleging attorney error in failing to challenge the amount of drugs attributable to the defendant and the facts underlying the conspiracy charge. The defendant additionally contends that he agreed only to plead guilty to cocaine base and not to crack cocaine, that the court itself erred by accepting the plea without a factual basis, and that the indictment itself was defective for failing to include a specific drug amount. However, during his rearraignment, the defendant clearly conceded his involvement in a conspiracy involving five or more grams of "crack cocaine." His current allegations are flatly refuted by the record of that proceeding:

> THE COURT: ...Why don't you just tell me what you did that makes you believe you're guilty on this conspiracy charge, Mr. Coleman?
>
> DEFENDANT COLEMAN: I – I take full responsibility for the involvement that I had in the cocaine.
>
> THE COURT: But what's that involvement?
>
> DEFENDANT COLEMAN: I sold three grams of crack cocaine to Parrish Langley.
>
> THE COURT: Okay. Did you know that – that this was part of an agreement to possess – I'm sorry, part of an agreement to distribute five grams or more of crack cocaine?
>
> DEFENDANT COLEMAN: Yeah. Yes, ma'am. You mean – what is – yeah, five grams.
>
> THE COURT: The charge is that there was a conspiracy or an agreement, and that the agreement was that there was five grams or more of crack cocaine and that it would be sold.
>
> DEFENDANT COLEMAN: Yes, ma'am.
>
> THE COURT: Did you know that was the agreement?

DEFENDANT COLEMAN: Yes, ma'am.

THE COURT: And you – and you went along with it; right?

DEFENDANT COLEMAN: Yes, ma'am.

THE COURT: ....Did that agreement and the acts that occurred pursuant to it occur in October of 2007 between roughly the 6th and the 23rd?
DEFENDANT COLEMAN: Yes, ma'am, it did.

THE COURT: And did it occur in Fayette County and Woodford county?

DEFENDANT COLEMAN: Yes, ma'am, it did.

THE COURT: Okay. And did you agree or conspire with some or all of these people; Ronnie Carson, Timothy Steadman, Andre Hillard, and Walktoria Smith?

DEFENDANT COLEMAN: Yes, ma'am.

THE COURT: Okay. And when you made that agreement with them, did you know and intend that the substance you were talking about was crack cocaine?

DEFENDANT COLEMAN: Yes, ma'am.

THE COURT: And do you admit that it was, in fact, crack cocaine?

DEFENDANT COLEMAN: Yes, ma'am

Doc. 140, TR at 21-23. There was no error by counsel or by the court given the clear factual basis for the plea admitted by the defendant in open court. *See e.g., United States v. Laskowski*, 1 Fed. App'x 363, 367 (6th Cir. 2001)(where defendant stipulated to drug amount in plea, defendant could not challenge effectiveness of counsel on that basis); *see also Nimmons v. United States*, 2007 WL 1624098 at *2 (E.D. Tenn. June 1, 2007)(rejecting ineffective assistance of counsel claim that defendant would not have pleaded guilty had he known he was pleading to crack instead of cocaine base).

The defendant wrote the court to request leniency prior to the imposition of sentence. In

that letter, dated September 3, 2008 and received 9/16/08, the defendant accepts "full responsibility" for the charge of "conspiracy to distribute" "because I was in the car when it got pulled over and I did know what was going on even though I was not doing the actual transaction." Doc. 129. Notwithstanding the contents of his first letter and his statements at rearraignment, the defendant wrote the court a second time suggesting that he did not know the amount of drugs being sold, or the legal definition of "conspiracy" in the charge to which he had pleaded guilty. At sentencing the presiding district judge discussed the contents of that letter, which has been filed of record, to ensure that defendant was not attempting to deny his guilt or withdraw his plea:

> THE COURT: ...In this letter you say, and I quote, " I was truly ignorant to the conspiracy definition that I went along with my lawyer to sign the plea agreement. First of all, the DEA and CI Parrish Langley who I've known for 20 years or better called and woke me, woke me up, the morning of October 23rd and told me of the transaction between them and my co-defendant Ronnie Carson. And at that time I did not know Parrish was a CI. I called Ronnie, and he asked me to ride with him to the meeting location and I did, not knowing what was being sold as far as how much. But my lawyer said the fact that I was in the car when it was pulled over I have conspired."
>
> In that letter you say you were ignorant of the conspiracy definition. You also say you didn't know how much was being sold.
>
> Did – do you admit that you knew that some illegal drugs were being sold?
>
> DEFENDANT COLEMAN: After I got in the car – well, after they called me and asked me find out what was going on – what was taking Ronnie so long to get together. And then – and then they called, and said they had called and woke me up that morning.
>
> THE COURT: Let me back up. This is a yes or no question.
>
> DEFENDANT COLEMAN: Yes, ma'am.
>
> THE COURT: Did you or did you not know that illegal drugs were being sold?

11

DEFENDANT COLEMAN: Yes, ma'am.

THE COURT: **Okay. And so this letter is not an attempt to deny guilt or withdraw your plea; correct?**

DEFENDANT COLEMAN: **No, ma'am**.

Doc. 141, TR at 3-4 (emphasis added).

The court provided a later opportunity to the defendant to address the court prior to the imposition of sentence, but he declined to do so. The court explained that it would not consider defendant's *pro se* objections to the presentence report, because those objections did not affect defendant's guideline calculations.

In addition to refuting defendant's current challenges to the factual basis for his plea, the record refutes defendant's current argument that counsel rendered ineffective assistance by failing to challenge the age of his prior state convictions. At sentencing, defense counsel pleaded for a lower sentence for his client. Included among his arguments were claims that: 1) the defendant's criminal history was over-represented due to the age of the prior state court convictions that were "barely" within a 15-year period; and 2) the defendant's role in the conspiracy was over-represented due to his minor role in a single transaction.

Despite suggesting that the old convictions were "barely" within the time limit, defense counsel conceded that the convictions were properly counted since defendant was not released until 2000, well within the requisite 15 year period. *See* U.S.S.G. §4A1.2(e)(1). Thus, there was no attorney error.

Likewise, no error occurred through counsel's arguments concerning defendant's limited role in the conspiracy. Counsel could not, obviously, refuse the indisputable statements of the

defendant that provided a factual basis for the plea. Nevertheless, defense counsel obtained a two-point reduction for defendant based upon his minor role, and continued to argue the issue with the hope of gaining an even greater reduction in his sentence:

> MR. GORDON: ...[T]here was some difficulty in trying to explain to him the second transaction. He had no qualms with the October 7th transaction where he sold three-point-some grams.
>
> The other thing that's in regard to the 30-some grams. But the Court may also be aware that I was also successful in being able to argue and receive a two-point reduction for minor role.
>
> THE COURT: Right.
>
> MR. GORDON: So that was obviously beneficial to him.
>
> THE COURT: And also the charge is not distribution, it's conspiracy.
>
> MR. GORDON: Right, right.
>
> THE COURT: Right.
>
> MR. GORDON: So having said that, Your Honor, you know, John Coleman is I really think – and I think in his letter, and I think in the request by the government to get him drug treatment , I really think John for the most part is a user. He has been a user for some period of time. He wasn't out there, you know, selling drugs to make money. I think he was basically maybe involved a little bit on the – on the outside to perhaps support his occasional habit that, you know, he would indulge in.

TR at 11. While the court declined to reduce the defendant's criminal history score based upon counsel's arguments, the court appeared to accept at least some of counsel's arguments, in that the defendant was sentenced to the bottom end of his guideline range.

### III. Conclusion and Recommendation

Defendant's tendered supplement to his §2255 motion has been fully considered along with his original motion. The motion to supplement may to that extent be granted, but otherwise

13

**IT IS RECOMMENDED THAT** the defendant's §2255 motion [Doc. 136 and 144] be **denied** due to the defendant's express waiver of his right to collaterally attack his conviction, and for additional reasons stated herein.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. *U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the 7th day of June, 2010.

**Signed By:**
**J. Gregory Wehrman**
**United States Magistrate Judge**